Colcock, J.
I take it to be settled, that where the instructions are positive, and such as may be executed, the agent is liable for any damage which may result from a departure from them. But, on an examination of the instructions given in this case, it appears that they are vague and equivocal, and such as necessarily carry with them a discretionary power. In the first part of the letter, the defendant is instructed when he arrived at Cape Francois, to sell the britannias to the best advantage, and to vest the proceeds in coffee of the first quality. But in the same letter the plaintiffs say, they suppose the britannias will be worth from §6 to §10. When this part of the letter is connected with the former, the fair construction of the whole, when taken together, would most unquestionably be, that he was to sell, if ho could obtain such a price *211 as they had stated; for, I would ask, why say any thing in their instructions about the price, if they were to be sold for what they would bring ? Might not the plaintiffs have brought their action against him on the ground of departure-from their instructions as to price Í They certainly might have done so, as well as brought their present action. But when it it is recollected, that the defendant, on his arrival on the 10th of October, 1804, wrote to the plaintiff that he had got to a bad market, britanuias at $4 ; coffee scarce, at 18 cents, &c., and that afterwards, on the 28th of the same month, he again wrote, that britannias were still dull; that he had sold 250 pieces, but knowing they would be great losers, he had stopped selling, in hopes of hearing from them ; that he remained’in the Island until the 3d of February; by which time the plaintiffs certainly could have answered his letter, and that they never wrote to him, leaving him to act as he might think proper. When these facts, I say, are considered, the defendant should be relieved from all responsibility.
It appeared that defendant had not shipped any coffee for plaintiffs, and this was the principal circumstance relied on to create a responsibility in the defendant, it being said that it indicated fraud, he having written to the plaintiffs that he had commenced purchasing coffee for them, and having a quantity on board for himself: but, in my mind, there is no evidence of unfairness in this, for his first letter was written immediately on his arrival, and he might then have thought that he would be able to purchase all that he wanted, and afterwards it may have turned out differently. He was authorized to buy for others, and, it appears, he intended to buy for himself; so that it is presumable he only meant to say in his letter, that he had commenced buying generally ; nay, this must have’ been the case, for at the time he wrote, he was not in funds to purchase for the plaintiffs, having sold the first of the bri. tannias on a credit.
But, admitting, that under a belief that he could purchase as much as he wished, he had intended a part of his first purchase for plaintiffs, but afterwards finding that hé could not do so, kept it for himself, it being but a small quantity. What unfairness is there in this 1 If he coaid not buy for all, why was he to prefer the plaintiffs to other consignors, or to himself I On this point, however, little need be said; for the conduct of the plaintiffs in receiving the value of the britannias which were sold, exonerates the defendant from all liability, if any there was, for not vesting the proceeds in coffee. It shews that they believed it to be impractica- *212 ^e’ an<^ ‘s’ as a confirmation of his act; 1 Johnson’s Cases, HO 5 s0 that the only ground remaining is, that of his having left the britannias at the Island-
When the situation of the country, the exactions of government for liberty to purchase this article, the additional duties which it would have been necessary to pay on the re-exportation of them, and the subsequent capture of the vessel, are considered, it will certainly appear to have been a correct exercise of the discretionary power vested in him, to leave the goods at the Island.
It was contended that no discretion was given to the defendant. Whatever act, other than such as is directed to be performed by the instructions, is done is an act of discretion. If then, the instructions cannot be carried into execution, a discretion must be used, for something must be done. In any possible view of the case, however, the jury have gone too far, in allowing interest on the britannias left at the Island ; for it is considered as a settled doctrine in this State, that interest on an open account is not allowed, unless expressly agreed to be paid, or it be proved to have been the custom of the parties to allow it; which is considered as an agreement to pay; 1 Camp. 52 ; neither of which circumstances was shewn in the case. I am, for these reasons, of opinion that a new trial should be gVanted.
Nott, J.
This was a special action on the case, brought by Andrew Holmes & Co. against Captain Misroon, who, it appears, sailed from Charleston to Cape Francois, in the double capacity of captain and agent, for the plaintiffs, with a cargo, part of which consisted of britannias, belonging to them, with instructions to sell to the best advantage, and to convert the proceeds into coffee for their use. A part of the britannias were sold, and the remainder were left at the Cape, unsold, and he bought no coffee for the plaintiffs. The next day after the vessel left the Cape, on her return voyage, she was captured, and carried into St. Jago de Cuba, and condemned. The plaintiffs recovered from the underwriters the amount of money which was on board, being the proceeds of the britannias which were sold. The principal questions submitted to the court, are : 1. Whether the defendant departed from his instructions in not selling the britannias, and purchasing coffee. 2. If he did, whether the plaintiffs were injured by it 1 and 3. Whether the jury were authorized to give interest on the amount of damages found for plaintiffs 1
By his letter of instructions, he had three things to perform : 1. To sell the britannias; 2. To purchase coffee; and 3. To pur *213 chase that which was good. Now, if he had it in Lis power to perform all those things, and performs none of them, he certainly did not follow his instructions. These were facts for the consideration of a jury ; they have been fairly submitted to them, and they have found a verdict for the plaintiffs, and this court will not undertake to set aside their verdict, without being well satisfied of its being contrary to law or evidence.
But it appears to me, that the testimony authorized the jury to ■find such a verdict. The first 'evidence is the defendant’s own letter, in which he informed the plaintiffs, that he had sold part of the ■britannias, and commenced purchasing coffee on their account. Yet, it appears, from his own protest, after the vessel was captured, that he had no coffee on board for them. This circumstance carries with it so much the appearance of fraud, as might well induce ■the jury to entertain a suspicion that all was not fair. He does not mention that the britannias cannot be sold ; he says that they sold low ; but he was not limited in price. Kelly, the witness, says they might have been sold ; the defendant no where says that he could.not buy coffee; on the contrary, he said he had already began purchasing coffee for the plaintiffs. Indeed, the difficulty of purchasing coffee decreased in proportion as the difficulty of selling britannias increased ; for the lower they sold, the less coffee he would be required to buy. But again, Kelly says coffee could have been bought; and his own protest shews, that he had bought of that article for himself, to the whole amount of this verdict. There is no proof that he could not have bought good coffee.
As to the second point, it was not incumbent on the plaintiffs to shew that they had actually sustained a loss, in consequence of the defendant’s not having pursued his instructions. It was sufficient that a loss had happened, which might have proceeded from that cause. It is presumable that if britannias, or the proceeds, had been on board at the time of the capture, that the value of the whole would have been recovered from the underwriters. The plaintiff’s letter informed him, that they had effected insurance on the cargo, and, admitting that not to be evidence of the fact, he ought to have been governed by it. The having recovered for what was on board, affords a presumption that the whole would have been covered by the policy. With regard to the risk of taking specie on board, that was already incurred, and could not have been enhanced by taking more:
As to the difficulty of the trade, I do not see any that would excuse him from performing his contract: but whatever it might have *214 keeD> he probably knew it, or ought to have done so, before he embarked in the undertaking. It affords a strong reason why he ought not to have left property in the hands of such people ; so ^ar’ therefore, I see no ground to set aside the verdict.
But on the third ground, I am of opinion that the jury ought not to have given interest. This was a special action on the case, sounding altogether in damages, and, therefore, could not carry interest. I think the jury might have made the value of the property, and the interest thereon, the measure of damages, and found a verdict for the aggregate amount; but no law has been introduced to shew that they could give interest, eo'nomine, in an action of this sort. I am, therefore, of opinion, that, on this ground, a new trial ought to be granted, unless the plaintiffs will release that part of the verdict.
BkevaRD, J.
The defendant was the special agent of the plain, tiffs, and received from them, on board the brig Fame, 1000 pieces of britannias, to carry to Cape Francois, to dispose of for the plaintiffs. The plaintiff’s instructions to him were, “ to dispose of the ■britannias immediately on his arrival at that place, to the best advantage, and to vest the proceeds in coffee of the first quality, to be brought to them in Charleston, by the return ot the same vessel.” In the letter of the plaintiffs, which contained these instructions, a hope or expectation is expressed that the britannias would sell for ten or eight dollars per piece; but it contained nothing besides, from which an inference might fairly be drawn that the britannias were not to be disposed of, in case eight dollars a piece, or more, could not be obtained. The defendant could not so have understood his instructions, as to doubt that he was authorized to sell for a less price than eight dollars a piece, since he began to sell immediately after his arrival at the Cape, and actually sold a number of pieces at four dollars a piece. It appears, too, that he made purchases of coffee on account of plaintiffs. This appears from his own letters to the plaintiffs, in which he stated, that on his arrival at the Cape, britannias were selling at four dollars a piece, and coffee at 18 cents per pound. But britannias soon fell to three dollars and three quarters. The brig was captured on her return voyage. Soon after this event, the defendant informed the plaintiffs that he had invested part of the proceeds of their^adventure in cash; viz., $ 1506,32, which was taken with the brig, and that he had left the remainder of the britannias, unsold, at Cape Francois, in the hands of confidential and solvent persons. It did not appear that the bri-tannias could not have been disposed of at four dollars, or three *215 dollars and three quarters a piece, or, at least, three dollars a piece ; and it did not appear that better could have been done with it, all ■circumstances considered. Neither did it appear, that the defend. ant might not have fulfilled his instructions, by investing the whole proceeds in coffee. This, as it appears to me, he ought to have done, and consequently his not doing it, is a violation of his instruc. tions. From his own shewing, he ceased to sell britannias, when he might haye sold at $3,75, and that he had made some purchases -of coffee. It has not been shewn, that in case he had sold at $3,75, it would not have 'been within the reasonable intendment of his instructions, as a disposal to the best advantage ; viz., the best price that could be obtained : nor has it been shewn what was done with the coffee, which was purchased for the plaintiffs : nor how the whole of the britannias, which were sold, came to be invested in cash, when he was instructed to lay the same out in coffee. It is clear to me, that he had not a discretionary power, as was alleged, to make such dispositions as he might conceive reasonable or advantageous ; he was bound to pursue the plain direction of his letter of instructions, if practicable, and it appears to me, that it was practicable to have done it; at least, to an extent beyond that to which he did pursue it. It was not excusable in him to suspend the execution of his orders, under a pretext that it was for the interest of his employers to do so ; and much less so, to wait for further instructions.
It is no excuse to say, that he did not wilfully violate or neglect his instructions. It is very immaterial, whether it proceeded from design, gross ignorance, or carelessness; there is, reason, however, to believe that he did wilfully violate \his instructions.
It was urged, in his behalf, that there was no proof that the plain, tiffs were damnified in consequence of the .defendant’s departure from his instructions, as the cash taken with the .brig was insured, and they have received an indemnity for that loss ; and as the remainder of the britannias were left in safe hands at the Cape. The answer to this is, that the plaintiffs have been injured by the conduct of their agent in violating their instructions ; first, in not selling all the britannias, but leaving the greater part unsold in the hands of strangers; second, in not having accounted for coffee actually purchased ; and thirdly, in not having invested the whole of the proceeds in coffee. The extent of the injury may be matter of speculation, but, at all events, the actual loss of the plaintiffs appears to be greater in amount than that given by. the verdict. Five hundred pieces of britannias, and upwards, were left in the *216 hands of defendant’s agents, at the Cape, as he says, without any authority from the plaintiffs, and without any necessity. This merchandize may be considered as lost to the plaintiffs, who may abandon it to the defendant, and make him answerable for the value, lhey may consider it as having been unlawfully converted to his own use, contrary to the terms on which it was bailed to him. ■ It did not appear from the evidence, as was contended, that the ruler or chief of the brigand government had so engrossed the trade in coffee, at the Cape, that it could not be obtained of the requisite quality, within the reasonable intent of the plaintiff’s instructions.
As to the charge against the estate of Mr. Schult, in the books-of his widow, without her consent, it cannot be considered of any consequence. It was not a payment, or an accord and satisfaction neither can it be deemed a discharge of the defendant from his liability, on the ground of an abandonment of their claim on the part of the plaintiffs.
But there is another objection to the verdict, not so easily surmounted as those I have considered. The verdict is for interest on the sum specified by way of damages. This is certainly incorrect.If the jury had calculated interest on the sum mentioned, and had added it to that sum, a verdict for the total amount as damages, would, in my opinion, have-been perfectly legal, and only a moderate compensation for the injury done. But the jury were not authorized to give any thing as interest. The verdict, therefore, on that ground, is illegal. But the plaintiffs may release their claim' to the interest thus illegally given ; and if they will do so-, I am of opinion the verdict ought to stand.
Grimke, J.
The second and fourth points having been abandoned, there remain only the first and third for consideration.With respect to the third, which states that the verdict was contrary to law and evidence, I am of opinion, that as the evidence was submitted to the jury, and.they have given a decision thereon, and as there is no ground on which it could be legally substantiated that their verdict is wrong, a new trial should not be granted-
I am of the same opinion with respect to the law ; for there is no point in the books clearer, than that an agent is bound strictly to adhere to the orders of his principal. The defendant, in this case, did not observe the directions given him; he, therefore, becomes accountable to the plaintiffs for the injury resulting to them-from his non-observance of orders. With respect to the third point, as interest is not allowed by our law, on unliquidated de- *217 taands, there must be a new trial, unless the plaintiffs will consent to relinquish that part of their verdict.
Míei.'fSeé 1 Com. on Cont. 235. Park, 206, 208. ¡2 Dal. 105. Doug. 376. Vinev’s Abr. Interest. 4 Dal. 286. Bro: Cli. 463, 2 Ves. jr. 300. 3N. Y. T K. 266. 1 Camp. 50. 3 Hen. and Mim. 493. 1 H. Bl. 227. 2 Bos. and Pul. 337; 472, &e. Nott and M’Cord, 5. Bulow v. Goddard.